IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JEFF JONES                                                                                              PLAINTIFF
Reg. #20386-078

v.                              No: 2:16-cv-00147 JM-PSH

PATRICIA MOREHART, *et al.*                                                              DEFENDANTS

# FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Jeff Jones, an inmate at the Forrest City Low Federal Correctional Institution ("FCI-Forrest City"), filed this *pro se* civil rights complaint against defendants Warden C. Rivera, Assistant Health Services Administrator Michael Kruger, Assistant Health Services Administrator Brenda Hoy, and Mid-Level Practitioner Rosemary Stiles (the "Original Defendants"). *See* Doc. No. 2. Jones later named Advanced Practice Nurse Patricia Morehart and Dr. Sheila Woodard as defendants. *See* Doc. No. 35. Jones sues defendants in both their official and personal capacities

and seeks both injunctive and monetary relief. *See* Doc. No. 2. Jones' claims against the Original Defendants have been dismissed, and Jones' official capacity claims against Morehart and Woodard have been dismissed. *See* Doc. Nos. 45 & 47.

Jones alleges that defendants were deliberately indifferent to his serious medical needs and failed to protect him from harm. Doc. Nos. 2 & 32. Specifically, he alleges that there was a significant delay in notifying him of his positive hepatitis C diagnosis, which delayed his medical care and treatment of the condition for more than two and one-half years. *Id.* Jones further alleges that during this time he was prescribed the nonsteroidal anti-inflammatory (NSAID) Naproxen for foot pain which negatively affected his condition. *Id.*

Before the Court is a motion for summary judgment and related pleadings filed by defendants Morehart and Dr. Woodard. *See* Doc. Nos. 54-56. Although Jones requested and obtained an extension of time to file a response to the defendants' motion, he has not done so. *See* Doc. No. 61. Because Jones failed to specifically controvert the facts set forth in defendants' statement of uncontested facts, Doc. No. 56, those facts are deemed admitted. *See* Local Rule 56.1(c). The defendants' statement of uncontested facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that the defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927

(8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The following material undisputed facts are taken from those submitted by the defendants which are supported by the following documentary evidence: Declaration of Dr. Te Cora Ballom with Attachments 1-42 (Doc. No. 25-1); Declaration of Rosemary Stiles (Doc. No. 25-2); Declaration of Dr. Nwannem Obi-Okoye (Doc. No. 25-3); Declaration of Patricia Morehart with

Attachments 1-3 (Doc. No. 55-1); and Declaration of Sheila Woodard with Attachments 1-9 (Doc. No. 55-2).[1]

1. Jones began his incarceration at FCI-Forrest City on February 14, 2014. Doc. No. 25-1 at 1.

2. Defendant Patricia Morehart is an Advanced Practice Registered Nurse at the FCI-Forrest City Health Services Department. Doc. No. 55-1 at 1.

3. Morehart has been employed by the Bureau of Prisons since January 12, 2014. *Id.*

4. Morehart provided Jones a l4-day initial evaluation on March 13, 2014, after Jones entered FCI-Forrest City. *Id.* at 1 & 4-8. As part of the evaluation, she ordered initial laboratory tests. *Id.* at 1 & 7.

5. On May 7, 2014, Morehart noted that Jones' liver functions were elevated and ordered testing to determine why. *Id.* at 1-2 & 11. While it was discovered that he had hepatitis C antibody, the finding had to be confirmed for RNA and genotype as well. *Id.* at 1-2.

6. Laboratory results from May 16, 2014, show that Jones' liver enzymes were AST 187 and ALT 292; the report also indicated that he was presumptively hepatitis C positive. Doc. No. 25-1 at 2 & 16. Additional confirmation testing was requested. *Id.*

7. On December 16, 2014, Morehart reviewed Jones' records, including laboratory results showing that Jones had HCV RNA and a genotype. Doc. No. 55-1 at 2 & 13. At that time, she requested follow up laboratory testing and requested that Dr. Capps review the laboratory results. *Id.*

---

[1] The declarations of Dr. Te Cora Ballom, Rosemary Stiles, and Dr. Nwannem Obi-Okoye were previously submitted in connection with the Original Defendants' motion for summary judgment (Doc. No. 24). Jones did not dispute the facts set forth in those declarations.

8. In early March 2015, Morehart left her employment with the Bureau of Prisons (the "BOP") to take a job at the VA hospital. *Id.* at 2. Morehart came back to work at the BOP on July 26, 2015, but did not return to FCI-Forrest City where Jones is incarcerated. *Id.* Morehart has not encountered Jones since December 2014. *Id.*

9. Defendant Sheila Woodard is a physician and at the time of the allegations in this complaint, she was employed by the BOP. Doc. No. 55-2 at 1. Currently, she serves as a contract physician at FCI-Forrest City. *Id.*

10. Before Jones was informed of his hepatitis C diagnosis, Dr. Woodard treated Jones for foot pain in March and April 2015. *Id.*

11. On March 24, 2015, Dr. Woodard co-signed an examination completed by Nurse Rosemary Stiles regarding Jones' foot injury, which occurred a few weeks before. *Id.* Dr. Woodard approved a ketorolac injection at that time. *Id.* at 1 & 5-7.

12. On April 8, 2015, Dr. Woodard examined Jones regarding the foot injury. *Id.* at 1 & 11-14. She ordered radiology exams and soft shoes for a month. *Id.*

13. On May 13, 2015, Dr. Woodard reviewed the negative radiology results for Jones' right foot and left knee x-rays. *Id.* at 2 & 16-19.

14. While Dr. Woodard was treating Jones for a foot injury in March and April 2015, she did not discuss any other diagnosis with him. *Id.* at 1-2.

15. Had Dr. Woodard known in March and April 2015 that Jones was unaware of the positive hepatitis C test, she would have discussed it with him or referred him to another physician on the staff. *Id.* at 2.

16. While Jones was being treated for his foot injury, he was prescribed Naproxen on March 24, 2015. *Id.* at 6. Jones received prescription refills for Naproxen on August 28, 2015;

December 7, 2015; January 11, 2016; and February 22, 2016.  Doc. No. 25-1 at 46; Doc. No. 25-2 at 2.

17. There was a delay in informing Jones of his hepatitis diagnosis.  Doc. No. 25-1 at 7.

18. On March 31, 2016, Jones was seen by Dr. Nwannem Obi-Okoye, a contract physician, who noted that Jones was hepatitis C positive and discontinued Naproxen.  Doc. No. 25-1 at 4 & 63-67.  Dr. Obi-Okoye notified Jones of his hepatitis C positive diagnosis, and his work-up for possible HCV treatment started soon afterwards.  Doc. No. 25-3 at 1.  These work-ups for HCV treatment included more labs and liver/abdominal ultrasound exams.  *Id.*

19. Dr. Woodard did not treat Jones again until April 20, 2016, after he had been notified of his hepatitis C status.  Doc. No. 55-2 at 2 & 21-22.

20. Dr. Woodard's encounters with Jones through the treatment of his hepatitis C were to review laboratory reports related to the progress of the treatment of his disease.  *Id.* at 2, 28-29, 31-32 & 34-35.

21. Jones was transported to Delta Medical Center in Memphis, TN for an ultrasound on June 24, 2016.  Doc. No. 25-1 at 4.  The results showed that his liver was within normal limits.  *Id.* at 4 & 78-79.

22. From July 2016 until May 2017, Jones continued to be evaluated for hepatitis C, had his liver enzymes monitored, and was submitted for hepatitis C treatment.  Doc. No. 25-1 at 4-6, 82-83, 86-87, 89-91, 93-94 & 99-121.

23. On December 7, 2016, a hepatitis C viral load report showed that Jones had no detectable hepatitis C virus.  Doc. No. 55-2 at 2 & 34.

24.     Or February 24, 2017, Dr. Woodard requested a follow up visit for Jones with a midlevel provider to discuss elevated liver enzymes. *Id.* at 2 & 37-40.

25.     Dr. Woodard had no further encounters with Jones. *Id.* at 2.

26.     On May 2, 2017, a doctor informed Jones that they were waiting for final approval of his HCV treatment by the Central Pharmacist. Doc. No. 25-1 at 6 & 123-124.

27.     Final approval for HCV treatment orders is completed by the Chief Pharmacist. Doc. No. 25-3 at 2.

28.     On May 10, 2017, Jones was approved for HCV treatment with a prescription for Epclusa for 12 weeks. Doc. No. 25-1 at 6 & 126. Jones' treatment began on May 20, 2017, and concluded on August 14, 2017. *Id.* at 6 & 131-134.

29.     On June 12, 2017, laboratory samples were drawn from Jones, which showed liver enzymes of AST 35 and ALT 32. *Id.* at 6 & 137-139. While his AST was elevated, his liver enzymes were significantly lower than reported on previous liver enzyme tests. *Id.*

30.     Dr. Obi-Okoye conducted a follow-up examination on July 11, 2017, and Jones reported no complaints or pain. *Id.* at 6 & 141-143.

31.     Jones' labs were drawn again on July 13, 2017, and he had an undetectable hepatitis C viral load. *Id.* at 7. His liver enzymes were AST 88 and ALT 52, which were elevated from the previous results. *Id.* at 7 & 145-146.

32.     Dr. Obi-Okoye saw Jones on August 10, 2017, for a follow-up on his lab results. *Id.* at 7 & 151-153. Dr. Obi-Okoye noted that the hepatitis C virus was undetectable and that the results indicated that alcohol contributed to the increased liver enzymes. *Id.;* Doc. No. 25-3 at 2.

33.     Jones admitted to drinking whiskey and using opiates prior to his incarceration. Doc. No. 25-1 at 7 & 151.

34.     Jones' medical records show that he has been consistently treated and reviewed for further treatment for his hepatitis C diagnosis since March 31, 2016. Doc. No. 25-4 at 2; Doc. No. 25-1 at 4-7 & 63-153.

35.     Dr. Obi-Okoye opined that even if Jones were made aware of his diagnosis earlier, it would not have changed the outcome of his treatment. Doc. No. 25-3 at 2.

## IV. Analysis

Morehart and Woodard argue they are entitled to qualified immunity with respect to Jones' individual capacity claims because Jones cannot establish a constitutional violation. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In considering whether defendants are entitled to qualified immunity, the Court first considers whether Jones has presented facts sufficient to show the violation of a constitutional right.

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976). To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (holding that negligence in diagnosis or treatment of medical condition is not sufficient to establish a constitutional violation).

The undisputed evidence shows that Morehart was not deliberately indifferent to Jones' serious medical needs. Morehart noted Jones' elevated liver enzymes on May 7, 2014, and ordered additional testing to confirm RNA and Genotype. Doc. No. 55-1 at 1. On December 16, 2014, she reviewed his records and noted that he had HCV RNA and a Genotype. *Id.* at 2. She requested follow-up testing and for Dr. Capps to review Jones' laboratory results. *Id.* Shortly thereafter, Morehart left the BOP to work out of state and has not encountered Jones since. Although Morehart did not inform Jones of his diagnosis during his December 2014 encounter, she worked to confirm his diagnosis and ordered additional testing and review by a doctor – these facts do not demonstrate deliberate indifference but an effort to provide appropriate medical care. Additionally, there is no evidence Jones' failure to learn of his diagnosis sooner caused any delay

9

in his treatment. *See* Doc. No. 25-3 at 2 (Dr. Obi-Okoye's opinion that Jones' earlier knowledge of his diagnosis would not have changed the outcome of his treatment).

Likewise, there is no evidence that Dr. Woodard intentionally failed to inform Jones of his diagnosis or intentionally caused a delay in treatment. Dr. Woodard treated Jones for a foot injury in March and April 2015. She was not aware of the hepatitis C diagnosis, and states that she would have informed Jones of the hepatitis C diagnosis had she known about it. Doc. No. 55-2 at 2. Even assuming, without finding, that Dr. Woodard should have reviewed the medical record and found evidence of the hepatitis C diagnosis, her failure to do so would not rise to the level of deliberate indifference, and mere negligence is not sufficient to establish a constitutional violation. Dr. Woodard did not treat Jones again until he had been informed of his diagnosis. *Id.* At that point she reviewed his laboratory reports and requested follow-ups with other providers. *Id.* Jones eventually received hepatitis C treatment, and the hepatitis C virus was not detectable following his treatment. Doc. No. 25-1 at 6-7.

Jones offers no evidence to prove that either defendant intentionally failed to inform Jones of his diagnosis or that he has been damaged by a delay in treatment. Regional Medical Director Ballom stated the failure to inform Jones of his hepatitis C diagnosis was due to incomplete documentation in his medical record. *See* Doc. No. 25-1 at 7. Jones' mere belief that defendants acted intentionally is insufficient to defeat their motion for summary judgment. *See generally Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1457 (8th Cir. 1996) (a plaintiff's "beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment.").

Finally, there is no evidence that Dr. Woodard was deliberately indifferent to Jones' serious medical needs when she approved the Naproxen prescriptions for Jones while he had elevated liver

10

enzymes. Although Dr. Obi discontinued use of the NSAID Naproxen due to Jones' elevated liver enzymes, there is no evidence in the record that NSAIDs such as Naproxen are likely to cause liver damage. In any case, according to the June 2015 ultrasound reports, Jones suffered no liver damage as a result of the Naproxen or the delay in treatment for hepatitis C. *See* Doc. No. 25-1 at 78. To the extent Jones should not have been prescribed Naproxen while he had elevated liver enzymes, Dr. Woodard's actions would at most amount to negligence and do not demonstrate that she was deliberately indifferent to his serious medical condition. Accordingly, Dr. Woodard entitled to qualified immunity, and Jones' claims against her should be dismissed with prejudice.

## V.  Conclusion

For the reasons stated herein, the undersigned recommends:

1. Defendants' motion for summary judgment (Doc. No. 54) be granted;

2. Jones' claims against defendants Morehart and Dr. Woodard be dismissed with prejudice.

SO RECOMMENDED this 29th day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE